IN THE MATTER OF THE ARBITRATION BE-TWEEN LOCAL UNION 1357, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, A. F. OF L., AND MUTUAL TELEPHONE COM-PANY.

NO. 2919.

Argued April 23, 1953.　　　　Decided May 22, 1953.

Le Baron and Stainback, JJ., and Circuit Judge Hawkins in Place of Towse, C. J., Disqualified.

184

OPINION OF THE COURT BY STAINBACK, J.

Mutual Telephone Company and Local Union 1357, International Brotherhood of Electrical Workers, A. F. of L., had a contract of employment whereby certain disputes between employees and the employer should be submitted to an arbitrator where the grievance committee provided for in the contract had failed to settle the dispute.

Article 7.6 of the contract provides that all decisions of the arbitrator shall be final and binding upon the parties and further provides: "All decisions of the Arbitrator shall be limited expressly to the terms and provisions of this Agreement and in no event may the terms of this Agreement be altered, amended, or modified by the Arbitrator."

A grievance was presented of a case in which two employees claimed that they were discriminated against in promotion. In December, 1951, the petitioner promoted two of its employees, Louis Miranda and William Kaeo, to the job of chief assigner. Miranda had about twenty-nine years continuous service with the petitioner and Kaeo about eighteen years. Thereafter, the respondent union and two junior employees, respondents Richard Shimizu and Kui Chong Kam, presented an alleged grievance to

the petitioner claiming that Shimizu and Kam were entitled to the promotions received by Miranda and Kaeo. Shimizu had been employed for about eleven years and Kam six. No adjustments of the alleged grievance having been made, the union and the individual complainants requested that the matter be submitted to an arbitrator selected in accordance with Article 7.5 of the agreement. No submission agreement apart from that in the contract of employment itself was made by petitioner and respondents, the petitioner taking the position that Shimizu and Kam, being junior employees, could have no basis for asserting rights under the express provisions of Article 8.1 of the agreement and, second, that the arbitration clause contained in the agreement itself (Aritcle 7.6) gave no authority to an arbitrator to hear and decide the questions of relative qualifications of the employees in the case of promotion and, third, that the agreement reserved such authority exclusively to petitioner.

The union and the respondents on the other hand contended that the superior employee was entitled to promotion even though he had less service and that the arbitrator had the authority and responsibility to examine and pass upon the qualifications and right to promotion as between the junior and the senior employee; that the qualifications for the job should be the governing factor.

The petitioner, Mutual Telephone Company, participated in the selection of the arbitrator and consented to a hearing solely under the terms of the agreement and only upon stipulation between the parties to the effect that the petitioner's participation in such arbitration would not impair its rights to challenge the arbitrator's authority to hear and determine the question presented by the complainants.

Article 6.1 provides that: "The supervision and con-

trol of all operations and the direction of all working forces, which shall include, * * * the right * * * to promote * * * employees, * * * shall be vested exclusively in the Company, except as otherwise covered in this Agreement."

Article 8.1 on seniority provides: "8.1 It is understood and agreed that in all cases of transfer, promotion, lay-offs, or re-call after lay-offs, qualifications for the job and length of continuous service shall be considered, and where qualifications for the job are equal, length of continuous service with the Company shall govern."

The arbitrator ruled that it was a "necessary corollary" to Article 8.1 that the employee who had "better qualifications" was entitled to the job even though he had less service; that he, the arbitrator, had authority and responsibility under the existing contract to examine the merits of the promotion case. The arbitrator stated: "The Arbitrator has carefully reviewed the testimony of the witnesses presented by the Company and the Union. There is obvious merit on both sides. The Company was confronted by a major reorganization of an important unit in its operation. It had the recommendations of an expert on how the work might be set up to give better and more efficient service to its customers. It reviewed the demands to be made on the two chief assigners and chose employees with long service who would best fit into the specific positions. There is nothing in the record to show that it did not act in good faith for the best interest of the public, the company and the employees.

"The Union, at the same time, had an equally important problem to consider. Two of the employees in the assignment unit who had had substantial experience both in assignment and facility work felt that they should have received the promotions. When the promotions were made they felt aggrieved. * * * They too acted in good faith."

The arbitrator further ruled that "section 8.1 contemplates that qualifications for the job shall be the governing factor. * * * that under the terms of this agreement the 'better' qualified person is entitled to the promotion." He further found that the grievance of Richard Shimizu was sustained by the record, that he was the better qualified and the company was ordered to offer him the job of chief assigner, but that Kam was not the better qualified and not entitled to the promotion, that the Company did not violate Article 8.1 in his case.

The Mutual Telephone Company sought to vacate the arbitration award made and entered by filing in the circuit court its application for an order vacating arbitration award, claiming that the award made by the arbitrator should be set aside and vacated under the provisions of section 8709, Revised Laws of Hawaii 1945, because the arbitrator exceeded his powers.

The respondents moved to dismiss the application to vacate the award and after a hearing upon these motions the circuit judge ruled against the motion to vacate the award and dismiss the same.

The circuit judge in his decision stated that the arbitrator examined Article 8.1 of the contract and determined its effect to be that the principal factor in deciding on promotion between the two employees was qualifications for the job, and seniority linked with continuous service was to come into consideration only after there had been a finding that the qualifications of the two competing employees were relatively equal, further stating that "This Court need not be in complete agreement with the arbitrator's interpretation of Article 8.1, the only question before the Court being whether the arbitrator's interpretation of that Article was reasonable, or wholly unreasonable." There was cited the Massachusetts case of *Mutual*

*Benefit Health and Accident Association* v. *United Casualty Company,* 142 F. (2d) 390, to the effect that an arbitration award may not be set aside either for error of fact or law.

Where an arbitration agreement contained in a collective bargaining agreement does not expressly confer upon the arbitrator jurisdiction to determine legal questions arising under the agreement but does limit his decision expressly to the terms and provisions of the agreement, the arbitrator has no authority to interpret or construe the provisions of collective bargaining but the court must determine the extent of the arbitrator's authority. (3 Am. Jur., Arbitration and Award, § 41, p. 868; *Texoma Natural Gas Co.* v. *Oil Workers I. U. Etc.,* 58 F. Supp. 132, *aff'd,* 146 F. [2d] 62, cert. *den'd,* 324 U. S. 872; *Belding Hemingway Co.* v. *Wholesale & Warehouse Workers' Union,* 295 N. Y. 541, 68 N. E. [2d] 681; *Consolidated Vultee Aircraft Corp.* v. *United Auto Etc.* [Calif.], 160 P. [2d] 113.)

In the case of *Consolidated Vultee Aircraft Corp.* v. *United Auto Etc.,* 160 P. (2d) 113, *supra,* the court said: "It was the duty of the court to determine from the agreement the extent of the referee's power and to annul any or all of the provisions of the award as to matters which had not been submitted to him for decision."

"Interpretation of arbitration agreements is ordinarily for the court. It is for the court, not the arbitrators, to decide whether the latter have exceeded their powers under the submission or have refused to exercise them, for since the submission is the foundation of the arbitrators' jurisdiction, their construction of it with respect to their own powers, unless clearly pursuant to its terms, is not conclusive.

"There is nothing peculiar in the rules of interpreta-

tion applied to arbitration agreements. As in the case of all agreements, the courts seek to give effect to the intent of the parties, as evidenced by the agreement itself, which will be liberally contrued to that end. * * *" (3 Am. Jur., Arbitration and Award, § 41, p. 868.)

It will be noted that in the Massachusetts case of *Mutual Benefit Health and Accident Association* v. *United Casualty Company,* 142 F. (2d) 390, *supra,* cited by the circuit judge in his decision to the effect that an arbitration award may not be set aside either for error of fact or law, qualified this with the statement that an award made within the scope of the arbitrator's authority is not open to judicial review.

It was the duty, therefore, of the circuit judge to interpret and construe the provisions of the agreement and determine the extent of the arbitrator's authority and not blindly accept the arbitrator's determination of his own authority.

In the light of this settled principle, we must examine the contract and determine as a question of law whether the arbitrator had authority to pass upon the questions as presented.

It will be noted that Article 7.6 of the agreement states that "All decisions of the Arbitrator shall be limited expressly to the terms and provisions of this Agreement and in no event may the terms of this Agreement be altered, amended, or modified by the Arbitrator." It will also be noted that Article 6.1 states that: "The supervision and control of all operations and the direction of all working forces, which shall include, but not be limited to, the right to hire, to establish work schedules, to suspend or discharge for proper cause, to promote or transfer employees, to relieve employees from duty because of lack of work, or for other legitimate reasons, shall be *vested exclusively*

in the Company, except as otherwise covered in this Agreement." (Emphasis added.)

The only provision limiting this is Article 8, headed "Seniority." Article 8.1 provides: "* * * in all cases of transfer, promotion, lay-offs, or re-call after lay-offs, qualifications for the job and length of continuous service shall be considered, and where qualifications for the job are equal, length of continuous service with the Company shall govern." It will be noted that this article relates exclusively to the rights as the article heading indicates, "Seniority." There is no other express restriction on the power of the company to control promotions, layoffs, recall after layoffs, transfers, etc., reserved under Article 6.1.

Is there any implied restriction to be gathered from any provision of the contract or from the contract as a whole?

It is argued by respondents that Article 8.1 must be "interpreted" that the employer must promote the junior man in preference to a senior man if the junior has "better qualifications," that this is a "necessary corollary" to Article 8.1.

A corollary is a proposition requiring no additional proof following upon one just demonstrated. It by no means follows that because a senior is entitled to promotion or to recall, etc., when his qualifications are equal, that a junior is entitled to promotion when the qualifications are not equal. A man is an animal but it is not a necessary corollary that an animal is a man. All men are animals but not all animals are men, some may be donkeys.

This contract has been carefully prepared and if it had been the intention of the contracting parties to promote in every case the better qualified man it would have been easy to say so, with a limitation that where the applicants are of equal skill the senior should be preferred, but this

was not done. To give this construction by implication would be to rewrite the contract.

However, even disregarding the plain language of the contract, it would be a rather extreme view to say that management should, after a layoff, be compelled to recall a junior of one-year employment in preference to a senior of thirty-years employment merely because the junior might be of superior qualifications, or promote the junior over such senior.

Further, while both qualifications for the job and length of continuous service shall be "considered," there is nothing to indicate how much weight shall be given to each factor nor under what circumstances the decision of management not to promote the senior could be reversed. It is unnecessary to pass upon these questions in this case as that situaiton is not before us, but where a decision is made by management it would seem to require a very unusual situation, in the absence of fraud or abuse of discretion, to permit a decision made in good faith to be reversed by a stranger to the company and one possibly not particularly familiar with the employees or problems to be met in conducting the business of the company.

There is no provision in the contract, expressed or implied, that gives an arbitrator authority to examine and pass upon the qualifications and rights to promotion claimed by junior employees against senior employees.

The case is reversed with instructions to the circuit court to vacate the arbitration award made in this matter.

*J. P. Blaisdell* and *R. M. Torkildson* (*Blaisdell & Moore* on the briefs) for appellant Mutual Telephone Company.

*T. W. Flynn, Jr.* (also on the brief), for respondents-appellees.